# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SY LEE CASTLE,<br><br>        Plaintiff,<br><br>    v.<br><br>A. K. SCRIBNER,<br><br>        Defendant.<br>_____/ | CASE NO. 1:04-cv-06624-SMS PC<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>(Docs. 133 and 139)<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT FOR DEFENDANT AND AGAINST PLAINTIFF, AND CLOSE THIS CASE |

<u>Order on Cross-Motions for Summary Judgment</u>

I. <u>Procedural History</u>

Plaintiff Sy Lee Castle ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's second amended complaint, filed October 21, 2005, against Defendant Scribner ("Defendant") for acting with deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment. (Docs. 14, 16.)

On May 9, 2007, Plaintiff filed a motion for summary judgment. (Doc. 133.) On May 30, 2007, Defendant filed an opposition and a cross-motion for summary judgment. (Docs. 136, 139.) Plaintiff filed an opposition to Defendant's cross-motion on August 1, 2007, and a reply to

1

Defendant's opposition on September 7, 2007.[1] (Docs. 148, 149, 155.) Defendant filed a reply to Plaintiff's opposition on August 16, 2007. (Doc. 150.)

II.     Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It is the moving party's burden to establish that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).

"When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting from W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Issues of Material Fact 99 F.R.D. 465, 487 (1984)). "But where the moving party has the burden - the plaintiff on a claim for relief or the defendant on an affirmative defense - his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Id. Thus, as to Plaintiff's motion for summary judgment, Plaintiff must demonstrate there is no triable issue as to the matters alleged in his complaint. Id. This requires Plaintiff to establish beyond controversy every essential element of his Eighth Amendment claim. Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992); Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986). Plaintiff's evidence is judged by the same standard of proof applicable at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

As to Defendant's motion for summary judgment, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed on April 4, 2005. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 7.)

in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

"[W]hen parties submit cross-motions for summary judgment, [e]ach motion must be considered on its own merits." Fair Hous. Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotations and citation omitted).

III.   Undisputed Facts[2]

1. In 1999, Plaintiff was stabbed in the neck and paralyzed. Plaintiff was provided with rehabilitation and physical therapy, and his mobility improved over the years following his injury.

2. On July 8, 1999, Plaintiff was found to have a small central disc bulge at C6-7, and degenerative disc disease at C5-6.

3. On January 4, 2000, Plaintiff was issued a permanent disability chrono, valid for one year, due to a spinal cord injury.

---

[2] A party moving for summary judgment is required to submit a Statement of Undisputed Facts which "enumerate[s] discretely each of the specific material facts relied upon in support of the motion and cite[s] the particular portions of any pleading, affidavit, deposition interrogatory answer, admission or other document relied upon to establish that fact." Local Rule 56-260(a). Plaintiff did not submit a Statement of Undisputed Facts in support of his motion for summary judgment. Despite this procedural deficiency, which renders Plaintiff's motion more burdensome than it ought to be, the Court has opted to consider the motion.

4. Plaintiff was classified as permanently mobility impaired at Salinas Valley State Prison on March 17, 2000.

5. On February 21, 2002, a physician determined that Plaintiff's condition had improved to the point that his disability no longer impacted his placement.

6. The California Department of Corrections and Rehabilitation uses a form 1845 to verify whether or not an inmate is disabled, the extent of the disability, and any assistance devices that have been ordered. Plaintiff's form notes "inmate has improved from DPM 1845 Sec. C to DNM Sec. D." The form also notes Plaintiff is permanently mobility impaired, and walks 100 yards and up a flight of stairs without pause, with the aid of a cane.

7. Plaintiff was transferred to California State Prison-Corcoran on April 21, 2003, and was medically evaluated, and medications were prescribed.

8. On May 2, 2003, Plaintiff was seen by a doctor, who issued a chrono for an ankle brace and orthopedic shoes due to his medical condition. The chrono was issued on May 12, 2003, and was effective from May 7, 2003, to May 6, 2004. A neurology consultation was also scheduled.

9. On May 21, 2003, Plaintiff was issued a priority pass to the Acute Care Hospital for an appointment with a neurologist for his spinal cord injury and lower extremity weakness.

10. Correctional Officer Dill arrived to escort Plaintiff to his appointment at approximately 8:30 a.m.

11. Plaintiff informed Officer Dill that he was classified as permanently mobility impaired (lower extremities), had a severe spinal cord injury, and suffered from muscle loss, muscle spasms, loss of motor coordination, paralysis, chronic lower back pain, and irregular bowel movements.

12. Officer Dill had seen Plaintiff's orthopedic shoes, ankle brace, and cane.

13. Plaintiff requested transportation to the medical appointment.

14. Officer Dill told Plaintiff that if he did not walk, he would be "refusing."[3]

---

[3] It would be documented that Plaintiff refused the appointment.

15. During the walk to the Acute Care Hospital, Plaintiff almost fell down three times and almost walked into Officer Dill.

16. Officer Dill told Plaintiff about a memorandum she authored requesting a multi-person vehicle to transport inmates to and from the Acute Care Hospital.[4]

17. Officer Dill told Plaintiff to file a grievance against Defendant for denial of transportation for mentally and physically disabled inmates.

18. Following the neurology consultation, a doctor ordered an ankle brace, orthopedic shoes, and a cane. The chrono was issued on May 30, 2003.

19. On May 23, 2003, Plaintiff saw Dr. Thirakomen and requested that he be allowed to walk outside his cell.[5] No medical orders were issued at that time.

20. On June 19, 2003, Officer Dill informed Plaintiff her request had been denied.

21. On July 3, 2003, Plaintiff filed a grievance/reasonable modification or accommodation request for transportation to his medical appointments. The request was granted on July 25, 2003.

22. On July 25, 2003, a memorandum was issued stating that due to Plaintiff's medical condition, a wheelchair or other appropriate transportation must be provided whenever Plaintiff is escorted to the Acute Care Hospital.

23. In July 2003, it was noted in Plaintiff's medical records that he walked with a slight limp.

24. Plaintiff was on pain medical during the time of the event at issue in this action.

25. Wardens are responsible for the care, custody, treatment, and training of inmates in their custody.

///

---

[4] Although Plaintiff alleges that Officer Dill told him she had issued a memorandum to Defendant Scribner, who was the Warden, requesting that transportation to the Acute Care Hospital be provided for mentally and physically disabled inmates who were unable to ambulate or who were unable to ambulate without significant hardship, Plaintiff does not dispute that Officer Dill's specific request was for the acquisition of a transportation vehicle to transport inmates to the Acute Care Hospital. (Doc. 149, 7:2-12.)

[5] Although Plaintiff asserts that the doctor was "totally against" him walking, the Court was not able to ascertain any comment to that effect in the medical record relied upon by Plaintiff. (Doc. 133, Motion, 15:10-11; Doc. 133, Ex. S, pg. 75.)

26. CSP-Corcoran was designated as a Disability Placement Program, which houses disabled inmates with mobility impairments.

27. CSP-Corcoran has three separate facilities, commonly called yards. The Acute Care Hospital is located in an area outside of the inmate housing units, so that it is accessible to all three facilities. Inmates with medical appointments at the Acute Care Hospital are escorted by officers.

28. Every inmate is asked whether or not he wants to keep the appointment because an inmate has the right to refuse.

29. The escorting officers move from building to building gathering all the inmates in the facility with appointments.

30. Officer Dill escorted Plaintiff to approximately fifty medical appointments at the Acute Care Hospital over a period of three years. The Acute Care Hospital is 2400 linear feet from Plaintiff's housing unit.[6]

31. Officer Dill submitted a written request to the Warden's Office for the procurement of a multi-person transportation vehicle, to be used for transporting inmates to the Acute Care Hospital.

32. Officer Dill believes the request was processed by the Business Services Office.

33. The purchase of any item costing $5000.00 or more has to be procured through the budget process.

34. If a request for the purchase of a vehicle had been submitted in the Spring of 2003 and had been approved by the Warden or his designee, it would have been included in the 2005/2006 fiscal year budget. The purchase of a vehicle also required approval by the California Office of Fleet Administration.

35. Officer Dill was informed by her union representative that her request for a multi-person vehicle had been denied. However, a short time later, the prison located a golf cart type vehicle that was capable of transporting six people and could be used for medical escorts.

---

[6] 800 yards or .45 of a mile.

|   |   |
|---|---|
| 1 | The vehicle had to be modified for inmate use by placing a shield between the officer and inmate seating. |
| 2 | |
| 3 | 36. There were some occasions when the cart was not available for transporting inmates, once for an extended period of time because of damage to the cart, and a bus was provided for substitute transportation. |

36. There were some occasions when the cart was not available for transporting inmates, once for an extended period of time because of damage to the cart, and a bus was provided for substitute transportation.

37. On a number of occasions Plaintiff was provided with a wheelchair when the cart was not available.

38. CSP-Corcoran has a system for identifying inmates with physical disabilities and for accommodating their individual needs as part of a court ordered remedial plan in the case of Armstrong v. Schwarzenegger, C 94 2307 CW, which involves compliance with the Americans with Disabilities Act.

39. Every inmate who arrives at CSP-Corcoran is medically screened by a nurse. All prior medical orders remain in place. Any inmate who has been previously prescribed a mobility assistance device is by policy allowed to retain that device. Such devices include but are not limited to wheelchairs, crutches, canes, and braces.

40. CSP-Corcoran also has a procedure for inmates to request any accommodation or modification of their program that they believe is necessary, but which has not been provided to them. The process includes the inmate filling out a form 1824, entitled "Reasonable Modification or Accommodation Request."

41. Regulations of the California Department of Corrections and Rehabilitation provide that only institutional medical staff, or consultants, can prescribe medical treatment for an inmate.

///
///
///
///

IV. Discussion[7]

Both parties assert that they are entitled to judgment as a matter of law.[8] The claim in this action arises from Defendant's alleged policy or practice of not providing transportation to medical appointments for inmates in need of such transportation. Plaintiff alleges that he was unable to walk the distance to the Acute Care Hospital due to his disabilities and medical problems, and that the failure to provide him with transportation to the Acute Care Hospital on May 21, 2003, when he requested it caused him to suffer severe pain and exacerbated his medical problems.

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006). "A person deprives another of a constitutional right, where that person 'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" Hydrick v. Hunter, 500 F.3d 978, 988 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "[T]he 'requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" Id. (quoting Johnson at 743-44).

Under section 1983, liability may not be imposed on supervisory personnel such as Defendant for the actions of their employees under a theory of respondeat superior. When the named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).

---

[7] The Court has reviewed Plaintiff's complaint, the cross-motions for summary judgment, the oppositions, and the replies. The Court declines to exhaustively list every argument forwarded, every fact recited, and every piece of evidence submitted by the parties. Omission in this order of reference to various arguments, facts, or evidence should not be interpreted by the parties as an indication that the Court overlooked that argument, fact, or piece of evidence.

[8] Plaintiff's motion is not verified and may not itself be treated as a declaration. Moran v. Selig, 447 F.3d 948, 759-60 (9th Cir. 2006); Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998). However, Plaintiff did submit his own declaration in support of the motion, along with other documentary evidence. Further, Plaintiff's complaint is verified and may be treated as a declaration. Id.

9

Plaintiff must demonstrate that Defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).

Throughout his motion and opposition to Defendant's cross-motion, Plaintiff focuses heavily policies and duties to accommodate inmates with disabilities and provide access to programs and services, on the prison's designation as a Disability Placement Program, on compliance with the Armstrong remedial plan, and on Defendant's responsibility as warden for the care, custody, treatment, and training of inmates. (E.g., Doc. 133, 10:5-9 & 12:1-9; Doc. 149, 12:14-21.) It bears repeating for the record that this action is not one for violation of the Americans with Disabilities Act and is proceeding only for violation of the Eighth Amendment. The issue here is not whether Plaintiff had a disability that should have been accommodated in terms of facilitating access to a benefit, program, or service, but whether failing to provide Plaintiff with transportation to his medical appointment on May 21, 2003, when he requested it violated the Cruel and Unusual Punishments Clause of the Eighth Amendment.

///

It is undisputed that Plaintiff is classified as permanently mobility impaired in the lower extremities; sustained a spinal cord injury; suffers from muscle loss, muscle spasms, loss of motor coordination, paralysis, chronic lower back pain, and irregular bowel movements; and uses orthopedic shoes, ankle brace, and cane. When Plaintiff transferred to CSP-Corcoran, he was designated, pursuant to a 2002 Disability Verification form, as permanently mobility impaired not impacting placement, and able to walk 100 yards and up a flight of stairs without pause with the use of a cane.

CSP-Corcoran is designated as a Disability Placement Program, which houses disabled inmates with mobility impairments inmates. CSP-Corcoran has a system for identifying inmates with physical disabilities and for accommodating their individual needs as part of a court ordered remedial plan in the case of Armstrong v. Schwarzenegger, C 94 2307 CW, which involves compliance with the Americans with Disabilities Act. CSP-Corcoran also has a procedure for inmates to request any accommodation or modification of their program that they believe is necessary, but which has not been provided to them. The process includes the inmate filling out a form 1824, entitled "Reasonable Modification or Accommodation Request."

Every inmate who arrives at CSP-Corcoran is medically screened by a nurse, and all prior medical orders remain in place. Any inmate who has been previously prescribed a mobility assistance device is by policy allowed to retain that device. Such devices include but are not limited to wheelchairs, crutches, canes, and braces.

After Plaintiff arrived at CSP-Corcoran on April 18, 2003, he was seen by a doctor on May 2, 2003. The doctor issued a chrono, effective from May 7, 2003, to May 6, 2004, for an ankle brace and orthopedic shoes due to Plaintiff's medical condition. A chrono or other order for a wheelchair or transportation to Plaintiff's medical appointments was not issued.

On May 21, 2003, Plaintiff was issued a priority pass to the Acute Care Hospital for an appointment with a neurologist for his spinal cord injury and lower extremity weakness. CSP-Corcoran has three separate facilities, commonly called yards. The Acute Care Hospital is located in an area outside of the inmate housing units, so that it is accessible to all three facilities. Inmates with medical appointments at the Acute Care Hospital are escorted by officers. The escorting

officers move from building to building gathering all the inmates in the facility with appointments, and every inmate is asked whether or not he wants to keep the appointment because an inmate has the right to refuse.

Officer Dill arrived to escort Plaintiff to his appointment at approximately 8:30 a.m., at which time Plaintiff informed her that he was classified as permanently mobility impaired (lower extremities), had a severe spinal cord injury, and suffered from muscle loss, muscle spasms, loss of motor coordination, paralysis, chronic lower back pain, and irregular bowel movements. Officer Dill was also aware that Plaintiff had orthopedic shoes, an ankle brace, and a cane. Plaintiff requested transportation to the medical appointment, but Officer Dill told Plaintiff he could either walk or refuse the appointment.

During the walk to the Acute Care Hospital, which was 2400 feet from Plaintiff's housing unit, Plaintiff almost fell down three times and almost walked into Officer Dill.[9] Officer Dill told Plaintiff about a memorandum she authored requesting acquisition of a multi-person vehicle to transport inmates to and from the Acute Care Hospital, and she told Plaintiff to file a grievance against Defendant for denial of transportation for mentally and physically disabled inmates.

Following the neurology consultation, a doctor ordered an ankle brace, orthopedic shoes, and a cane. The chrono for those items was issued on May 30, 2003. Further, on May 23, 2003, Plaintiff saw Dr. Thirakomen and requested that he be allowed to walk outside his cell. However, no medical orders were issued at that time.

On June 19, 2003, Officer Dill informed Plaintiff that her request had been denied, and on July 3, 2003, Plaintiff filed a "Reasonable Modification or Accommodation Request" (form 1824) and requested transportation to his medical appointments. On July 25, 2003, the request was granted and a memorandum was issued stating that due to Plaintiff's medical condition, a wheelchair or other appropriate transportation must be provided whenever Plaintiff is escorted to the Acute Care Hospital.

---

[9] Plaintiff's objection to this fact on the ground that the person who conducted the measurement is not a surveyor or a plant manager is not persuasive. (Doc. 148, 12:1-17.) In any event, the exact distance from the housing unit to the Acute Care Hospital is immaterial to the outcome in this order.

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "[A]n 'inadvertent [or negligent] failure to provide adequate medical care' alone" is insufficient to state a claim, and an isolated incident when compared to overall treatment "'ordinarily militates against a finding of deliberate indifference.'" Jett, 439 F.3d at 1096 (quoting McGuckin, 974 F.2d at 1060 (internal quotations and citations omitted)).

Plaintiff is unquestionably a disabled inmate with permanent mobility impairment to his lower extremities. However, although Plaintiff asserts that the walk to the Acute Care Hospital was outside of his physical capability, Plaintiff has presented no evidence that on May 21, 2003, he had a documented medical need (e.g., a chrono or order) for transportation to the Acute Care Hospital or that he had sought an accommodation through the proper channels available at the prison but was denied that accommodation by Defendant directly or via a policy or practice attributable to the Defendant. Rather, Plaintiff asked that transportation be provided on the morning of his appointment when the escorting officer arrived to take him to the appointment. Plaintiff's decision to ask the escorting officer for transportation to the Acute Care Hospital at that time was, at most, an informal verbal request and without formal documentation of a medical need for transportation. Further, the evidence demonstrates that after May 21, 2003, Plaintiff sought an accommodation through the proper channel so that he would not have to walk to the Acute Care Hospital and the accommodation was in fact granted.

There is no evidence what the May 21 appointment was for other than to see a neurologist for a spinal cord injury and lower extremity weakness. As such, there is no evidence upon which to base in inference that the appointment was of a nature that refusing the appointment and rescheduling it once a formal request for an accommodation of transportation to the Acute Care

Hospital had been made was not a viable option.[10] Defendant has submitted evidence that inmates may refuse an appointment. Plaintiff was not forced to keep the apparently non-urgent appointment, and in light of Officer Dill's refusal or inability to provide transportation via vehicle or wheelchair, Plaintiff could have opted not to keep the appointment if walking to the Acute Care Hospital was not within his physical capability. The Court accepts as true that due to Plaintiff's medical condition, the walk was difficult and caused him physical pain.[11] However, it is unclear why, if Plaintiff knew the walk was beyond his ability, he undertook it to begin with under the circumstances. There is also no evidence that, having made it to the Acute Care Hospital, Plaintiff notified medical personnel that the walk had been too far for him and was causing him hardship, or requested assistance from medical staff to get back to his housing unit.

The abilities and physical limitations of disabled inmates will differ by individual and the accommodations necessary to ensure that such inmates have access to medical care will differ depending on those abilities and limitations. Being a disabled inmate does not bestow upon Plaintiff a constitutionally protected entitlement to make random demands of staff in general regarding what he asserts at any given moment to be necessary accommodations in routine situations. There are processes in place for ensuring that an inmates's needs are accommodated based on his individual situation. Plaintiff may not, in a non-urgent situation, informally and without prior notice, seek a new accommodation; voluntarily proceed with the allegedly injurious activity without the requested accommodation when it is not provided; and thereafter assert that he was subjected to cruel and unusual punishment by the failure to provide the accommodation.

There is simply no evidence that Defendant had a policy or practice of refusing to transport inmates with a documented need for transportation. While there was not a vehicle standing by to

---

[10] It is undisputed Plaintiff has a number of significant medical problems. However, there is no evidence the problems were new or emergent on May 21, 2003. Plaintiff asserts the appointment was, in part, for his spinal cord injury, which occurred in 1999. Plaintiff's contention that if he had refused the appointment, he could have been suffering further injury to his spine without knowing it or could have risked suffering further injury to his spine is nothing more than a layman's supposition. (Doc. 149, P's Opp., CR pg. 4:10-27.) It is not admissible evidence that the appointment was of an urgent nature rendering refusal of the appointment a non-option.

[11] Because Plaintiff is not a medical expert, his opinion that the walk exacerbated his existing medical problems is not admissible. Plaintiff may testify that he suffered increased pain, however.

14

transport inmates upon their request and while Officer Dill's request for the acquisition of such a vehicle was subsequently denied, the absence of a vehicle standing ready should an inmate request transportation on the morning of his appointment does not violate the Eighth Amendment. Defendant has submitted evidence that there were processes in place to identify inmates' individual needs and to accommodate those needs. Plaintiff utilized one of the available processes after he had to walk to the Acute Care Hospital on May 21, 2003, and his request for accommodation was granted.

There is no evidence from which a trier of fact could conclude either that Defendant Scribner knew, based on Plaintiff's medical condition, that walking to the Acute Care Hospital posed a substantial risk of serious harm to Plaintiff, but disregarded that risk anyway, or that there was a policy or practice, attributable to Defendant, of not providing transportation for inmates who were classified or qualified as having a medical need for transportation to appointments.[12] Plaintiff is not entitled to summary judgment, and Defendant is entitled to summary judgment.

V.   Order

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, filed May 9, 2007, is DENIED;
2. Defendant's cross-motion for summary judgment, filed May 30, 2007, is GRANTED; and
3. The Clerk of the Court shall enter judgment for Defendant and against Plaintiff, and shall close this case.

IT IS SO ORDERED.

**Dated:   March 18, 2008**             /s/ Sandra M. Snyder
                                    UNITED STATES MAGISTRATE JUDGE

---

[12] Again, this is not a case where Plaintiff sought through proper channels an accommodation he was arguably entitled to and was denied. Once Plaintiff formally sought the accommodation, it was granted.